IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:20-CV-159

| | |
|---|---|
| KIMBERLY STEWART, | ) |
| Plaintiff, | ) |
| v. | ) **OPINION AND ORDER** |
| TRULITE GLASS & ALUMINUM SOLUTIONS, LLC, and MARK WOOD, | ) |
| Defendants. | ) |

Before the Court is the partial motion to dismiss of Defendants Trulite Glass & Aluminum Solutions, LLC ("Trulite") and Mark Wood ("Wood") (collectively, "Defendants"). [DE-10.] Plaintiff Kimberly Stewart ("Plaintiff") alleges that Defendants unlawfully discriminated against her on the basis of sex and her disability and retaliated against her during the course of her employment with Trulite. [*See* DE-1-1 (the "Complaint").] Plaintiff asserts ten causes of action, and Defendants challenge three here. Specifically, Defendants move to dismiss the following, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted: (1) Count Seven for "Wrongful Discharge in Violation of Public Policy as Expressed in the Persons with Disabilities Protection Act" against Trulite; (2) Count Eight for "Intentional Infliction of Emotional Distress" against Defendants; and (3) Count Ten for "Punitive Damages" against Wood. For the reasons stated below, Defendants' partial motion to dismiss [DE-10] is GRANTED.

I. Factual Allegations[1]

On or about March 20, 2016, Plaintiff began employment at Trulite's W220 Service Center in Youngsville, North Carolina. [Complaint ¶¶ 10-11.] Plaintiff alleges that during her employment she was subject to discrimination and harassment by several individuals:

A. Preston 'PJ' Garrett

First, Plaintiff alleges that a former general manager of the W220 Service Center, Preston 'PJ' Garrett, was fired "after Ms. Stewart presented the company with clear evidence of Mr. Garrett's sexual harassment towards her." [Complaint ¶ 14.] At all other times relevant to the Complaint and at the time of her termination, Wood was the general manager of the W220 Service Center. [Complaint ¶ 13.]

B. Jimmie Hayes

Second, Plaintiff alleges that one coworker, Jimmie Hayes, "[o]n multiple occasions . . . commented that Plaintiff, as a woman, needed to be more submissive." [Complaint ¶ 45.] Plaintiff also alleges that, in one instance, Hayes, during a group meeting, stated that "this is a male work environment . . . we men get loud . . . we use profanity," that "I shouldn't have to work with a woman," and that "a woman has no business on the warehouse floor." [Complaint ¶ 24.]

C. Roosevelt Wiggins

Third, Plaintiff alleges that another coworker, Roosevelt Wiggins, would always refer to Plaintiff as "girl" [Complaint ¶ 47] and that, in one instance, he aggressively approached Plaintiff using profanity after she reported a safety violation [Complaint ¶ 32].

---

[1] The following allegations appear in the Complaint and are taken as true for the limited purpose of this motion to dismiss. *See Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 191-92 (4th Cir. 2015) ("[W]e recount the facts as alleged by the [plaintiffs] in their complaint, accepting as true all well-pleaded facts." (citation omitted)).

### D. Defendant Wood

Finally, Plaintiff levies multiple allegations against Wood. Plaintiff alleges that she would complain to management about the abovementioned conduct and that Wood would minimize the conduct [Complaint ¶ 46] and retaliate against Plaintiff for reporting it [Complaint ¶ 27]. Plaintiff alleges that after Wood became aware of Plaintiff's complaints about Jimmie Hayes' conduct in the group meeting, he held a team meeting where he framed the issue as one of "personal feelings causing a disruption to the harmony of the team," and gave Plaintiff a document to sign that stated "if this type of behavior continues, it will result in disciplinary actions up to and including termination." [Complaint ¶ 29.] Plaintiff also alleges that after she complained about the incident involving Roosevelt Wiggins, "[r]ather than addressing the conduct of Mr. Wiggins, Defendant Wood informed Plaintiff that she was being moved to an isolated area." [Complaint ¶ 33.]

As a result of these occurrences, Plaintiff began to experience anxiety and ultimately requested leave under the Family and Medical Leave Act on March 14, 2019. [Complaint ¶ 37.] Less than a week later she was terminated. [Complaint ¶ 39.] Plaintiff alleges that when she asked Wood why she was terminated, he replied: "Well, I'm not saying you did anything wrong, but apparently you're just not comfortable working here and at this point, quite frankly, all your complaints are becoming a distraction to the workplace. So, no need to take FMLA, we're just going to let you go." [Complaint ¶ 42.] As Plaintiff was about to enter her car after being escorted out of the W220 Service Center by security, "Defendant Wood, as he was walking away, dusted off his hands and commented, 'good riddance bitch.'" [Complaint ¶ 43.]

3

Case 5:20-cv-00159-M   Document 19   Filed 07/23/20   Page 3 of 12

E. Other general allegations

Plaintiff has also generally alleges that she "regularly experienced, among other things, unwelcomed sexual advances, sex-based violence, and other discrimination based on sex" [Complaint ¶ 19] and that Trulite has provided inconsistent reasons for her termination [Complaint ¶¶ 41, 44].

II. Motion to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court shall "'accept as true all of the factual allegations contained in the complaint,' and 'draw all reasonable inferences in favor of the plaintiff.'" *Covey*, 777 F.3d at 192 (citations omitted). To survive a motion to dismiss, a complaint must contain facts and law sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a claim for relief." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *see Iqbal*, 556 U.S. at 677-80. In making this determination, the Court need not rely on "labels," *Twombly*, 550 U.S. at 555, "nor need [] 'accept as true unwarranted inferences, unreasonable conclusions, or arguments,'" *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).

A. Wrongful Discharge in Violation of Public Policy as Expressed in the Persons with Disabilities Protection Act (Count Seven)

In Count Seven, Plaintiff alleges that "Defendant Trulite is Liable for Wrongful Discharge in Violation of Public Policy as Expressed in the Persons with Disabilities Protection Act." [Complaint at 14.] Defendants argue that Count Seven should be dismissed because claims that arise under the North Carolina Persons With Disabilities Protection Act (the "NCPDPA") are dismissed "when they arise out

4

of the same facts as a claim under the ADA [Americans with Disabilities Act]," and Plaintiff has invoked the NCPDPA and asserted a concurrent ADA claim here. [DE-11 at 7; Complaint at 12 (asserting ADA claim against Trulite).] In response, Plaintiff states that Defendants have misinterpreted Count Seven—while Plaintiff "acknowledges that statutory NCPDPA claims filed under N.C. Gen Stat. 168A should reasonably be dismissed when they arise of the same facts as an American with Disabilities claim,"[2] she argues that, instead, Count Seven is a "common law wrongful discharge in violation of public policy claim"[3] not subject to the same preemptive limitations. [DE-15 at 7-8.]

---

[2] The NCPDPA provides a statutory cause of action, but prohibits courts from exercising jurisdiction over such a claim where the plaintiff has also asserted a similar claim under the ADA. The NCPDPA, in relevant part, reads:

> A person with a disability aggrieved by a discriminatory practice . . . or a person aggrieved by conduct prohibited . . . may bring a civil action to enforce rights granted or protected by this Chapter . . . No court shall have jurisdiction over an action filed under this Chapter where the plaintiff has commenced federal judicial or administrative proceedings under . . . the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., as amended, or federal regulations promulgated under that Act, involving or arising out of the facts and circumstances involved in the alleged discriminatory practice under this Chapter.

N.C.G.S. § 168A-11(c).

[3] North Carolina courts recognize a cause of action for common law wrongful discharge where "termination [is] for a purpose in contravention of public policy." *Sossamon v. Granville-Vance Dist. Health Dep't*, 232 N.C. App. 522, 757 S.E.2d 527 (2014). "[A]t the very least, public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statute." *Id.* (citing *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992)). The NCPDPA, in turn, provides a policy statement which reads, "the practice of discrimination based upon a disabling condition is contrary to the public interest and to the principles of freedom and equality of opportunity; the practice of discrimination on the basis of a disabling condition threatens the rights and proper privileges of the inhabitants of this State; and such discrimination results in a failure to realize the productive capacity of individuals to their fullest extent." N.C. Gen. Stat. § 168A-2; *see Clark v. United Emergency Servs., Inc.*, 189 N.C. App. 787, 661 S.E.2d 55 (2008) ("The public policy she alleges defendant violated is under the NCPDPA. To sustain a claim for wrongful discharge in violation of public policy . . . .").

Plaintiff's attempt to recast Count Seven does not save it. In *Sheaffer v. Cty. of Chatham*, which Defendants principally cite [DE-11 at 7; DE-16 at 5], the court interpreted plaintiff's cause of action as a common law wrongful discharge claim under the policy statement expressed in the NCPDPA—rather than an NCPDPA statutory claim—and dismissed it in light of plaintiff's ADA claim anyway. 337 F. Supp. 2d 709, 734 (M.D.N.C. 2004). The Court finds no compelling reason to depart from the Middle District's conclusion in *Sheaffer*, and Plaintiff has not provided one.

B. Intentional Infliction of Emotional Distress (Count Eight)

Plaintiff brings claims against both Trulite and Wood for Intentional Infliction of Emotional Distress ("IIED") arising out of their alleged discrimination and retaliation. Defendants argue that Plaintiff has not alleged severe emotional distress nor the type of 'extreme and outrageous' conduct required under North Carolina IIED law. Putting aside the question of whether Plaintiff has adequately alleged severe emotional distress, the Court agrees that the conduct alleged cannot sustain IIED claims against the Defendants.

1. Legal Standard

To state an IIED claim, Plaintiff must allege "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Pierce v. Atl. Grp., Inc.*, 219 N.C. App. 19, 32, 724 S.E.2d 568, 577 (2012) (citation and internal quotation marks omitted). Whether actions constitute extreme and outrageous conduct is a high bar: "To meet the essential element of extreme and outrageous conduct, the conduct must go beyond all possible bounds of decency, and 'be regarded as atrocious, and utterly intolerable in a civilized community.'" *Wagoner v. Elkin City Sch.'s Bd. of Educ.*, 113 N.C. App. 579, 586, 440 S.E.2d 119, 123 (1994) (citation omitted). In the employment context, North Carolina courts have been particularly reluctant to find that conduct alleged meets this standard. *See Miller v. Gerber Collision (Northeast), Inc.*, No. 4:19-CV-18-D, 2019 WL

2527105, at *3 (E.D.N.C. June 19, 2019) ("Under North Carolina law, it is extremely rare to find conduct in the employment context that rises to the level of outrageousness necessary to support an IIED claim." (gathering cases)). "'[L]iability clearly does not extend to mere insults, indignities, [or] threats . . . .[,]' [r]ather, '[i]n cases where North Carolina courts have found IIED claims actionable, the conduct has been extremely egregious, and involved sexual advances, obscene language, and inappropriate touching.'" *Id.* (citations omitted).

2. Application

a. Wood

Plaintiff argues that Wood's failure to respond to her justified complaints of discrimination, his unlawful termination of Plaintiff, and his use of the term "bitch" was extreme and outrageous. Plaintiff specifically focuses on Wood's use of an expletive, noting that it was particularly troublesome considering the context in which it was said—at the time of Plaintiff's allegedly unlawful discharge and when Wood already knew that Plaintiff had already been suffering emotional distress. [DE-15 at 6-7.] Defendants counter that similar or more egregious conduct has failed to constitute extreme and outrageous conduct as a matter of law.

A review of North Carolina IIED case law shows that similar and more egregious conduct has been found insufficient to sustain an IIED claim. *See, e.g., Ortiz v. Big Bear Events, LLC*, No. 3:12-CV-341-RJC-DCK, 2013 WL 247444, at *4 (W.D.N.C. Jan. 23, 2013) (not extreme and outrageous conduct where plaintiff alleged that her supervisor "touched Plaintiff inappropriately; [] made sexually offensive comments toward her; [and] made comments to third parties about engaging in sexual acts with Plaintiff."); *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 493-94, 340 S.E.2d 116, 122-23 (1986) (not extreme and outrageous conduct where coworker "screamed and shouted at [plaintiff], called her names, interfered with her supervision of waitresses under her charge, and on one occasion threw

7

menus at her" nor when a general manager, *inter alia*, "cursed at her on one occasion"); *Guthrie v. Conroy*, 152 N.C. App. 15, 567 S.E.2d 403 (2002) (not extreme and outrageous conduct where coworker touched or rubbed plaintiff's neck and shoulders, placed a lampshade on her head when she fell asleep at her desk, threw potting soil and water on her while she was planting flowers at work, remarked that he'd "always wanted to see [her] in a wet T shirt," and placed small objects between the legs of a "naked man" statuette that plaintiff displayed on her windowsill at work and asked her "how she liked it" with the additions); *Payne v. Whole Foods Mkt. Grp., Inc.*, 812 F. Supp. 2d 705, 708 (E.D.N.C. 2011) (not extreme and outrageous conduct where plaintiff alleged "ostracism, targeted criticism, false and anonymous accusation, and periodic intentional efforts to overwhelm him with work" and "incidents in which his co-workers played 'indecent music,' engaged in 'indecent conversation,' were 'mean' to him, and 'withheld assistance' from him"), *aff'd*, 471 F. App'x 186 (4th Cir. 2012); *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 545 (E.D.N.C. 2008) (not extreme and outrageous conduct where plaintiff alleged that defendant "failed to promote [plaintiff] while promoting or hiring less qualified younger persons, refused her requests for additional training, failed to place her on mentoring status, retaliated against her for complaining about alleged race discrimination, and terminated her employment due to her age, race, and sex"); *Buser v. S. Food Serv., Inc.*, 73 F. Supp. 2d 556, 573-74 (M.D.N.C. 1999) (not extreme and outrageous conduct where plaintiff alleged "Defendants (1) demanded that she return to work despite the fact she had taken an approved leave of absence . . . (2) terminated her in violation of federal law . . . and (3) took such action while Defendants knew, or should have known, of [plaintiff's] and her husband's poor medical conditions and financial straits").

Moreover, the type and severity of conduct that would typically sustain an IIED claim in the employment context—"extremely egregious, and involv[ing] sexual advances, obscene language, and inappropriate touching," *Miller*, 2019 WL 2527105, at *3 (citations omitted)—is not pled here. Plaintiff

8

has alleged no inappropriate touching or sexual advances and only one instance of foul language against Wood—that Wood said "good riddance bitch" as he walked away on Plaintiff's last day. This single instance of foul language is insufficient to state an IIED claim. *Cf. Hogan*, 79 N.C. App. at 493-94, 340 S.E.2d at 122-23 (not extreme and outrageous conduct when coworker "screamed and shouted at [plaintiff], *called her names*, interfered with her supervision of waitresses under her charge, and on one occasion threw menus at her" nor when a general manager, *inter alia*, "*cursed at her on one occasion*" (emphases added)); *see also Johnson v. Bollinger*, 86 N.C. App. 1, 3, 356 S.E.2d 378, 380-82 (1987) (although outside employment context, dismissal of IIED claim appropriate where plaintiff alleged defendant called him a "a stupid son-of-a-bitch" on one occasion).

b. Trulite

Plaintiff's claim against Trulite fails for the same reason: Plaintiff has failed to allege the type of conduct sufficient to state an IIED claim in the employment context. In addition to the allegations against Wood discussed above, Plaintiff alleges that Jimmie Hayes made boorish, sexist comments and Roosevelt Wiggins called Plaintiff "girl" and, on one occasion, used unspecified profanity. [Complaint ¶¶ 24, 45, 32, 47.] But, Plaintiff does not allege conduct that is "extremely egregious, and involved sexual advances, obscene language, and inappropriate touching." *Miller*, 2019 WL 2527105, at *3 (citations omitted). The additional instance of unspecified profanity is insufficient to state an IIED claim as a matter of law. *Cf. Hogan*, 79 N.C. App. at 493-94, 340 S.E.2d at 122-23; *Johnson*, 86 N.C. App. at 3, 356 S.E.2d at 380-82.

Plaintiff directs the Court's attention to her allegations against PJ Garrett, who, Plaintiff alleges, was fired "after Ms. Stewart presented the company with clear evidence of Mr. Garrett's sexual harassment towards her." [Complaint ¶ 14.] However, Plaintiff's reference to some undisclosed incident of purported sexual harassment is not sufficient to state an IIED claim. In *Cooper v. Smithfield*

9

*Packing Co.*, a case involving sexual harassment and North Carolina IIED law, the Fourth Circuit held that "[t]he critical flaw in [plaintiff's] First Amended Complaint . . . is her failure to plead facts sufficient to raise the inference that Lowery's actions were 'extreme and outrageous.'" 724 F. App'x 197, 201 (4th Cir. 2018) (citation omitted). "[Plaintiff] averred in a general and conclusory fashion that she was 'subjected to sexual harassment . . . which mostly consisted of sexually explicit comments' and that the harassment 'worsened and included, but was not limited to, sexually explicit statements made to her, sexual advances made toward her, inappropriate sexual contact and making continuous physical and emotional threats.' . . . She further alleged that Lowery subjected her to 'offensive sexual harassment, in terms of the work conditions, privileges, benefits, and work environment.'" *Id.* The Fourth Circuit found those allegations insufficient because "[d]evoid of any specific facts accompanying these characterizations, the First Amended Complaint simply failed to make out acts sufficiently extreme and outrageous to sustain an IIED claim." *Id.* Similarly, here, the Court cannot discern whether the allegations involving PJ Garrett could sustain an IIED claim. Plaintiff's allegations are devoid of any detail and PJ Garrett could have been "quietly let go" [Complaint ¶ 14] for any number of reasons, including reasons unrelated to Plaintiff's alleged sexual harassment, and for any degree of sexual impropriety. "While a claim for IIED may be based upon sexually harassing behavior, it does not follow that every instance of sexual harassment automatically qualifies under this rigorous standard for 'outrageous' behavior." *Ortiz*, 2013 WL 247444, at *4; *see also Cooper*, 724 F. App'x at 201 ("Undoubtedly, sexual harassment is odious and offensive in any context," but only "[w]hen [it is] sufficiently extreme, [will] the conduct [] also support a common-law IIED claim." (citation omitted)). There is no basis upon which the Court can reasonably infer that Plaintiff's allegations concerning PJ Garrett's conduct meet the high bar for extreme and outrageous conduct.

### C. Punitive Damages (Count Ten)

Finally, Plaintiff asserts a punitive damage claim against the Defendants, and Defendants challenge Plaintiff's request as it pertains to Wood. [Complaint ¶¶ 116-119; DE-10 at 1.] Defendants argue that the punitive damage claim against Wood should be dismissed because, after the IIED claim is dismissed, the only remaining claim against him is for a violation of the Family and Medical Leave Act (the "FMLA"), which does not permit the recovery of punitive damages. [DE-11 at 8; Complaint ¶¶ 76-83 (alleging FMLA claim against Wood)]; *see Canady v. Pender Cty. Health Dep't*, No. 7:15-CV-17-D, 2016 WL 927180, at *4 (E.D.N.C. Mar. 4, 2016) ("The FMLA does not permit the recovery of punitive damages." (citation omitted)). Plaintiff argues that her IIED claim against Wood, which can support a reward of punitive damages, should survive and so, too, should her claim for punitive damages. [DE-15 at 8.]

As a general rule, "[a] punitive damages claim is not technically an independent cause of action, but is instead dependent upon an award of compensatory damages on one of a plaintiff's other claims." *U.S. Tobacco Coop., Inc. v. Big S. Wholesale of Virginia, LLC*, 365 F. Supp. 3d 604, 618-19 (E.D.N.C. 2019) (citation omitted); *see also Vinson v. Int'l Bus. Mach. Corp.*, No. 1:17-cv-00798, 2018 WL 4608250, at *11 (M.D.N.C. Sept. 25, 2018) ("Under North Carolina law, punitive damages are a type of relief, not an independent cause of action." (citations omitted)).

Moreover, the Court has found that Plaintiff has not adequately alleged an IIED claim against Wood, see *supra* II.B.2.a, and, as Defendants argue, where no "underlying North Carolina claims have survived" and the only cause of action that remains is pursuant to the FMLA, "Plaintiff's request for punitive damages under N.C. Gen. Stat. § 1D-15(a) (2017) must be dismissed." *Woodruff v. Red Classic Transit, LLC*, No. 3:19-CV-00050, 2019 WL 4670789, at *4 (W.D.N.C. Sept. 24, 2019).

The Court also dismisses Count Ten against Trulite to the extent it purports to state a separate cause of action, although Plaintiff's request for punitive damages against Trulite shall remain. *See Vinson*, 2018 WL 4608250, at *11 (dismissing cause of action for punitive damages "to the extent it purports to state a separate cause of action," but denying motion to dismiss "to the extent [plaintiff] seeks punitive damages for any [] cause of action that would properly support such a remedy."); [DE-1 at 18 ("Prayer For Relief . . . and/or punitive damages").]

III. Conclusion

For the foregoing reasons, Defendants' partial motion to dismiss [DE-10] is GRANTED in its entirety.

SO ORDERED this the 23rd day of July, 2020.

_____
RICHARD E. MYERS II
UNITED STATES DISTRICT JUDGE